GEORGE W. PATTERSON, Jr., Respondent, v. HENRY H. BIRDSALL and RACHEL E. BIRDSALL, Appellants.

*Equity — Subrogation — Usury.*

A., the owner of certain real estate, entered into an agreement with B., who had held a second mortgage thereon, in a suit upon which a decree of foreclosure and sale had been entered, that B. should sell said real estate under the decree, and should purchase the same, and should then take an assignment of the first mortgage and convey said property to A., who should thereupon give back to B. a mortgage thereon for the amount secured by the decree and the first mortgage.  B. sold the premises under the decree, purchased them, conveyed them to A., took back a mortgage for the amount agreed upon, and thereafter paid the amount of the first mortgage to the holder, and took a satisfaction-piece thereof instead of an assignment.  B. afterward commenced an action to foreclose the mortgage given to him by A. after his conveyance of the property to A.   This action resulted in a judgment declaring said mortgage to be usurious and void.  B. then commenced this action in equity to have the mortgage for which he had paid the owner and received a satisfaction-piece declared a lien upon the premises, asking that he be subrogated to the rights therein enjoyed by the owner, prior to the payment of the amount thereof by B. to him, and asked that the parties to this action be foreclosed of their rights and interests in the premises, and that the same be sold.  *Held*, that he was entitled to such relief.

Appeal from a judgment in an action in equity tried by the Hon. Jas. C. Smith, at Special Term, in Steuben county.

The judge, at Special Term, found that all the facts alleged in the complaint were proved and established.  The complaint alleged, in substance, that on the 15th day of May, 1859, the defendant Henry H. Birdsall executed under his hand and seal, and delivered to one Brundage Tompkins, a bond dated that day,

in the penal sum of $4,000, and to secure the payment of the principal sum and interest mentioned in the condition of the said bond, the said defendants, Henry H. Birdsall and Rachel E. Birdsall, did at the time execute under their hands and seals, and acknowledge and deliver to the said Brundage Tompkins, as collateral to said bond, a mortgage bearing even date with said bond, whereby they mortgaged to said Brundage Tompkins, in fee, certain lands and real estate, in said mortgage described, and the same was duly recorded in the clerk's office of the county of Steuben, on the 17th day of May, 1849; that the defendant, Henry H. Birdsall, failed to comply with the condition of said bond and mortgage.

That on or about the 20th day of January, 1852, the said defendants, Henry H. Birdsall and Rachel E. Birdsall, to secure the payment to Stephen T. Hayt and Benjamin A. Towner of the sum of $4,800, according to the condition of a bond then executed and delivered to them by the said Henry H. Birdsall, executed and delivered to said Hayt & Towner a mortgage on the premises above referred to, which mortgage was duly acknowledged and recorded in the said clerk's office of the county of Steuben; that on or about the 20th day of April, 1858, the said bond and mortgage last aforesaid were by the said Hayt & Towner duly assigned to this plaintiff and one John N. Hungerford, who were then partners, and they became and were the owners and holders thereof; and there was due and unpaid on said last mentioned bond and mortgage about the sum of $1,500; that on or about the said 20th day of April, 1858, this plaintiff and said Hungerford, copartners as aforesaid, brought an action in this court against said defendants, Henry H. Birdsall and Rachel E. Birdsall and others, to foreclose said bond and mortgage so assigned to them by said Hayt & Towner, and that such proceedings were had therein, that on or about the 9th day of August, 1858, a judgment or decree of foreclosure was perfected therein and entered in the office of the clerk of Steuben county; that himself and said Hungerford having the said decree of foreclosure, and the principal of said mortgage to Brundage Tompkins having become due and being unpaid, and large arrears of interest having accrued thereon, it became

necessary for the plaintiff and Hungerford, in order to protect their lien and interest under said decree, to pay or provide for the payment of said mortgage to said Brundage Tompkins; and the defendants, Henry H. Birdsall and Rachel E. Birdsall, were desirous that all the title and interest of said Henry H. Birdsall in and to the said lands should be divested, and that the title thereto be conveyed to said Rachel E. Birdsall, discharged from all estate and interest of said Henry H. Birdsall therein, and from all liens thereon created by him, except the amount due plaintiff and said Hungerford, and the amount of the said Tompkins mortgage; and for that purpose that said premises should be sold on said decree, and plaintiff and Hungerford should become the purchasers thereof, and convey said premises to said Rachel E. Birdsall, upon her securing the payment of the amount of said decree, costs and expenses, and said Tompkins mortgage. And the said premises were then sold on said decree, and plaintiff and said Hungerford became the purchasers thereof, and it was agreed between plaintiff and said Hungerford on one part, and Henry H. Birdsall and Rachel E. Birdsall on the other part, that they, Hungerford and plaintiff, should advance the sum necessary to pay said Brundage Tompkins the amount due on his mortgage, which should not be satisfied, but an assignment thereof procured so that the lien thereof should be preserved, and that they should convey said premises to said Rachel E. Birdsall, and that she should execute her bond and mortgage on said lands to them, to secure the payment of the purchase-money agreed upon as the condition of said conveyance, which included the amount of said decree, costs and expenses of sale, and the amount to be paid to the said Brundage Tompkins, and, in pursuance of said agreement, plaintiff and said Hungerford became the purchasers of said land and sole owners thereof under said decree, and received a conveyance thereof from the sheriff of Steuben county, who made the sale, and thereupon conveyed the same to said Rachel E. Birdsall; and the said Rachel E. Birdsall, to secure the purchase-money, executed and delivered her bond and mortgage upon the same premises to plaintiff and said Hungerford, for a sum exceeding the amount of said decree, costs and expenses of sale, and the amount so to be paid to said Tompkins.

That on or about the month of December, 1858, the said firm, composed of this plaintiff and said Hungerford, was dissolved, and this plaintiff became the owner of the assets of said firm, including the agreement between said Birdsall and said firm, and all right thereunder, and all rights, benefits and property of said firm, and engaged to perform the obligations of said firm.

That afterward, and on or about the 16th day of May, 1859, he remitted to one C. W. Swift, the agent and attorney in fact of said Brundage Tompkins, the sum due and unpaid on said bond and mortgage so executed and delivered to him by said Henry H. Birdsall, as aforesaid, which then amounted to about the sum of $2,278.85, and requested said Tompkins to execute an assignment of said bond and mortgage, and forward the same and said bond and mortgage to this plaintiff. And said Tompkins, on the receipt of said sum, forwarded to this plaintiff said bond and mortgage, but did not forward an assignment thereof as requested, as aforesaid, but instead thereof forwarded a satisfaction-piece thereof executed by said Swift as the attorney in fact of said Brundage Tompkins.

That said satisfaction-piece was never delivered to either of the defendants, nor had it ever been recorded, or said mortgage satisfied of record, but said bond, mortgage and satisfaction-piece had ever remained in the possession of the plaintiff, and said bond and mortgage had never been paid or satisfied in any way, except as therein stated.

That in the month of December, 1860, he instituted proceedings to foreclose the said mortgage given by said Rachel E. Birdsall and Henry H. Birdsall to this plaintiff and said Hungerford, on or about the 1st day of November, 1858, as aforesaid, by advertisement, and that thereupon the said defendants, Henry H. Birdsall and Rachel E. Birdsall, commenced their certain action in this court against this plaintiff, to have said mortgage declared to be usurious and void, and that the same be delivered up and cancelled, and for an injunction restraining the sale and foreclosure under said advertisement, and that such proceedings were had in said action, that by the judgment of said court duly entered of record in Steuben county, on the 9th day of November, 1863, it was adjudged and decreed that the said sale by the sheriff of Steuben

county to this plaintiff and said Hungerford, and said conveyance to said Rachel E. Birdsall, and the said mortgage last therein referred to, were void, and that said conveyance and said mortgage be cancelled, delivered up, and discharged of record, and the said bond be cancelled and delivered up.

That the plaintiff was informed and believed that said conveyance and mortgage were duly cancelled and discharged of record.

That from said judgment an appeal was taken at the General Term of this court, where the said judgment was affirmed, and from such affirmance an appeal was taken to the Court of Appeals, by which court the said judgment was affirmed, in or about the month of June, 1872.

That there was still due and unpaid on said first mentioned bond and mortgage the sum of $2,000, and interest thereon from the 15th day of May, 1857, and that no proceedings at law had been had to recover the sum, so secured by the said bond and mortgage, or any part thereof.

And that George B. Bradley, Amaziah S. Kendall, and The Erie Railway Company had, or claimed, some interest in or lien upon said mortgaged premises, or in some part thereof, which interest or liens had accrued subsequently to the lien of said mortgage.

The plaintiff, therefore, asked judgment that he be declared to be the owner of said bond and mortgage executed and delivered to said Brundage Tompkins, and that he be subrogated to the rights of said Brundage Tompkins in respect thereto, and that the same is a valid and subsisting lien on said premises to the amount unpaid thereon as aforesaid, and that said satisfaction-piece, executed by said Swift, be cancelled and annulled, and that the defendants and all persons claiming under them, or either of them, subsequent to the commencement of this action, might be barred and foreclosed of all right, claim, lien and equity of redemption in the said mortgaged premises; that the said premises might be decreed to be sold according to law; that the moneys arising from said sale be brought into court; that the plaintiff might be paid the amount due on said bond and mortgage, with interest to the time of such payment, and the costs and expenses of this action, so far as the amount of such moneys would pay the same, and that the

plaintiff might have such other and further relief within the premises as should be just and equitable.

The following opinion was delivered at the Steuben county Special Term:

JAMES C. SMITH, J.:

An attentive examination of this case has led me to the conclusion that the action is well founded. The defense seems to rest mainly upon two propositions, neither of which, in my judgment, can be sustained. First, that the prior mortgage and the debt represented by it, are absolutely satisfied and extinguished, in equity as well as at law; and secondly, that the money advanced to the holder of the prior mortgage, was a loan to the defendants. These and several minor propositions advanced by the defendants' counsel, I proceed to consider.

The fact that the plaintiff and Hungerford, on paying the Tompkins mortgage, took a discharge instead of an assignment of the security, is not of itself a bar to the equitable relief sought by the plaintiff in this action, provided his claim is free from objection in other respects. If the plaintiff and Hungerford are to be regarded as having made such payment, as sureties of the defendants, in the exercise of the right of redemption as junior mortgagees, the plaintiff (who has acquired the interest of Hungerford) is entitled to be subrogated to the rights of the prior mortgagee, for his own protection, even although the redemption was made in the form of payment and satisfaction, amounting, at law, to an extinguishment of the debt. The fact of payment by a surety works a subrogation. The general principle has been well stated by an eminent judge in the following words: " When a person has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible, shall be clothed with the legal garb with which the contract he has discharged was invested, and he shall be substituted to every equitable intent and purpose, in the place of the creditor whose claim he has discharged. The surety is supposed to stand in the place of the creditor as completely as if the instrument had been transferred to him, or to a trustee for his use." (*Lidderdale* v. *Robinson*, 2 Brockenbrough, 159; 12 Wheat., 594; 1 Lead. Cas. in Eq., 118;

see, also, *Ellsworth* v. *Lockwood*, 42 N. Y., 89, and cases there cited by SUTHERLAND, J.; *Shetterly* v. *Gerwig*, 64 Barb., 620, 626; S. C., affirmed in Court of Appeals.)

Upon this equitable principle the plaintiff relies for the attainment of the relief demanded in his complaint. He contends that, as the security which he and Hungerford received from the defendants, to indemnify them for the money advanced to pay the Tompkins mortgage, has been adjudged void, in an action instituted by the defendants for that purpose, the payment should be regarded as having been made by himself and Hungerford in the exercise of their right of redemption as junior mortgagees, and that the plaintiff is entitled to subrogation.

In answer to that position, the defendants insist that the advance to pay the Tompkins mortgage grew out of, and was a partial performance of the usurious agreement which rendered void the plaintiff's security, and therefore the money so advanced is forfeited under the provisions of the statute against usury, and the plaintiff can claim no benefit from the transaction. And if that position is sound, it follows, not only that the plaintiff has not the right of subrogation in respect to the prior bond and mortgage, but also that such bond and mortgage, and the debt represented by them, are absolutely extinguished, and the defendants are discharged; for if the plaintiff cannot enforce the debt no one can.

But what is there in the transaction which a court of equity can regard as a satisfaction of the debt? The defendants have not paid a dollar of it. It was an honest and subsisting debt prior to and at the time of the making of the usurious agreement, and therefore it could not have been infected with the vice of that agreement; nor was it satisfied by the substitution of the new securities which were afterwards adjudged to be usurious and void. In these several respects, it is on the same footing as is the judgment of foreclosure which the plaintiff and Hungerford had obtained on their junior mortgage, the validity of which is not questioned by the defendants' counsel, notwithstanding it was satisfied in form by the sale which was had in pursuance of the usurious agreement.

It is suggested by the defendants' counsel that, as the plaintiff and Hungerford owned the judgment referred to at the time when they entered into the usurious agreement, and as their interest in

the prior mortgage (if they obtained any) was acquired after said judgment was made, there is a material difference between the two securities. If the agreement had provided, in terms, that the plaintiff and Hungerford should *purchase* the Tompkins mortgage and take an assignment of it instead of paying it, and they had done so, it is clear, I think, that the mortgage in their hands would not have been infected with the taint of usury, and their title would have been good. The case of *Kellogg* v. *Adams* (39 N. Y., 28), as I read it, is an authority in point. There it was made part of a usurious agreement, that the plaintiff should obtain an assignment of an outstanding mortgage made by the defendant, and hold it and give the defendant further time upon it for a usurious consideration; all which was done. It was decided that although the agreement was usurious, yet, as the mortgage was a valid security when the plaintiff purchased it, he acquired a good title and had a right to foreclose. In the present case it is evident from the letter of Birdsall to Swift, written after the agreement was made, that Birdsall was indifferent whether the prior mortgage was discharged or assigned. Nor is there any reason to doubt but that Swift, after receiving Birdsall's letter, was willing to have assigned the bond and mortgage if his power of attorney had authorized him to do so. It is also evident from the language of the agreement, and the circumstances attending its execution, that the provision for a payment and discharge, instead of an assignment, was adopted merely for the convenience of including the entire indebtedness in one bond and mortgage. So far as the evidence discloses, the defendant had no substantial right or interest to be subserved by taking up the old bond and mortgage and putting its amount in the new security. The only difference between *Kellogg* v. *Adams* (*supra*) and the present case is, that there the plaintiff took the legal title by assignment, while here the plaintiff and Hungerford, if they paid as sureties, acquired the equitable title by subrogation. In each case the purchase was made in pursuance of a usurious agreement, and in part performance of its provision. The case of *Kellogg* v. *Adams*, therefore, seems to be authority for saying that the interest of the plaintiff and Hungerford in the prior mortgage, is not affected by the circumstance that it was acquired in pursuance of the usurious agreement, and that the dis-

tinction adverted to by the defendants' counsel, between the mortgage and judgment, does not involve any substantial difference between the two securities in respect to their validity, or the validity of the plaintiff's title to them.

Thus far, the case has been considered upon the assumption that the plaintiff and Hungerford paid the prior mortgage as sureties. The defendants' counsel contends that they paid as principal debtors, they having assumed such payment by their agreement with the defendants. The answer is that the agreement having been adjudged void from its inception, at the election of the defendants, it cannot now be set up as the basis of a legal obligation on the part of the plaintiff and Hungerford, or to affect their pre-existing rights. The agreement being void, the question whether the plaintiff and Hungerford paid the prior mortgage as sureties, or as principal debtors, is to be decided as it would be if the agreement had not been made. In that view of the case the payment was an act which the plaintiff and Hungerford were under no legal obligation to perform. But they had a right coupled with an interest to make the payment, for the purpose of redeeming the prior mortgage for their own protection, and I think the payment is to be regarded as having been made in the exercise of that right.

The defendants' counsel also contends that the advance to pay the Tompkins mortgage was a loan to the defendants. That I regard as really the turning point in the case. If that position could be maintained, it unquestionably would defeat the action. But, was the advance a loan, having its inception in the usurious agreement? No new debt was created by it. Merely, the pre-existing debt changed hands, and one creditor was substituted for another, as was the case in *Kellogg* v. *Adams*. The money that was advanced did not become the property of the defendants. It was not put into their hands, nor was it at their disposal or under their control. It was applied to the specific purpose of paying a prior incumbrance which the parties paying had an interest in redeeming. Indeed, the advance to Tompkins was a transaction with him, and not with the defendants. True, the agreement with the defendants required the plaintiff and Hungerford to pay the Tompkins mortgage, but it did not bind them to pay any specified

sum. If the payment satisfied Tompkins, the agreement was performed. If Tompkins had been willing to relinquish the bond and mortgage for less than the debt, the discount would not have profited the defendants. In view of these considerations, I am of opinion that the money advanced to Tompkins cannot be treated as a loan to the defendants, within the meaning of the statute respecting usury.

But the argument of the defendants' counsel assumes that the vice of usury, in some way, infected the advance made upon the Tompkins mortgage, because it was made in pursuance of the usurious agreement. The case of *Kellogg* v. *Adams*, as has been said, is an authority against that position. Usury cannot be predicated of any agreement, other than one for the loan or forbearance of money. The only feature of the agreement in this case which made usury possible, was the stipulation to forbear the pre-existing debt. And the only circumstance that made the stipulation for forbearance usurious, was the provision for a *bonus* in excess of the legal rate of interest. Those features of the agreement in no way touched or affected the pre-existing debts, except as they extended the time for their payment. Nor did they touch or affect the transaction which the plaintiff and Hungerford had with Tompkins. With him they made their own bargain. That bargain has not been annulled by the judgment of the court which pronounced the agreement with the defendants usurious, and it could not be annulled, for Tompkins was not a party to the suit in which the judgment was rendered, or to the usurious agreement. That transaction stands, therefore, and I am unable to see why it does not transmit the equitable title to the bond and mortgage as effectually, as if the usurious agreement had not been made. Nor is there any thing inequitable in this view of the case. It is a matter of indifference to the defendants whether the prior mortgage is held by Tompkins or the plaintiff. And the final result will be strictly equitable to all parties; that is to say, the defendants having been relieved by the former judgment from the payment of the usurious bonus, will be required to pay what they honestly owed before the usurious agreement was made, and nothing more.

My conclusion is that the plaintiff is entitled to the relief asked in his complaint, with costs.

*Geo. T. Spencer*, for the plaintiff. The right of subrogation is co-extensive with the right of redemption, and arises in all cases where a party, having an interest in real property, either as owner or incumbrancer, pays off a prior incumbrance for protection. (*McLean* v. *Tompkins*, 18 Abb. Pr. R., 24; *Tompkins* v. *Seely*, 29 Barb., 212; *Dauchy* v. *Bennett*, 7 How., 375; *Jenkins* v. *Continental Ins. Co.*, 12 id., 66; *Averill* v. *Taylor*, 8 N. Y., 44; *Pardee* v. *Van Ankin*, 3 Barb., 534; *Elsworth* v. *Lockwood*, 42 N. Y., 89, 96, 97.) The right of redemption and subrogation by law is inconsistent with the right to an assignment of the debt, and of the evidence of the debt, so far, or inasmuch, as the assignment assumes the continued existence of the debt, and subrogation by law assumes its payment. (*Silver Lake Bank* v. *G. North*, 4 Johns. Ch., 370; 2 Story's Eq. Jur., §§ 1023, 1024; 2 Barb. Ch., 194; *McLean* v. *Towle*, 3 Sandf. Ch., 117; *Marsh* v. *Pike*, 10 Paige, 595.) This was also the rule of the civil law. (1 Domat [1784], 699.) A junior mortgagee, who pays off a prior mortgage under an agreement, or upon a consideration which has been annulled or has failed, or upon a sure security which has been set aside or is invalid, is equally entitled to subrogation as if he had simply paid off such mortgage for his own protection, without any arrangement for the purpose. (*Madison Avenue Baptist Church* v. *The Baptist Church in Oliver St.*, 2 Robt., 642; *Robinson* v. *Ryan*, 25 N. Y., 320.) Plaintiff may therefore stand upon the Tompkins mortgage, paid by him more than six months after the alleged usurious agreement, entirely unaffected by such agreement, or any transaction connected with the same. (*Gerwig* v. *Shetterly*, 64 Barb., 620.) This is a clear case sustaining the position of the plaintiff. And the principle is also found embodied in the civil law. (1 Domat [1802], 704.) The Tompkins mortgage was a valid debt, and security against the Birdsalls and their mortgaged premises, and was not satisfied or extinguished by the new security given by them to Hungerford and Patterson, but remained in full force. Their agreement to pay the mortgage was executory, and was substantially an indemnity against it. It was not therefore affected by the alleged usury. (*Cook* v. *Barnes*, 36 N. Y., 520; *La Farge* v. *Herter*, 5 Seld., 241; *Rice* v. *Welling*, 5 Wend., 596; *McCrany* v. *Alden*, 46 Barb., 472.) The judgment does not in any way

invalidate any other part of the transaction, and therefore necessarily affirms the validity of the Tompkins mortgage and the payment of the same by plaintiff. The judgment is a bar to any prosecution or defense by the defendants founded on that mortgage, or the payment of the same. (*Gates* v. *Preston*, 41 N. Y., 113; *Stackpole* v. *Robbins*, 48 id., 665; *Newton* v. *Hook*, id., 676.) The judgment is conclusive not only as to the subject-matter actually decided, but as to every other which the parties might litigate and have decided. (*Embury* v. *Connor*, 3 Coms., 511, 512.) The amount of the Tompkins mortgage was not loaned or advanced to defendants; they never had the money or controlled it; the transaction had none of the features of a loan. The agreement in respect to it treats it as a subsisting debt and incumbrance. The decree embraces nothing more, either in terms or by necessary implication. It it a familiar principle that a judgment concludes the parties only as to the grounds covered by it. (*People* v. *Johnson*, 38 N. Y., 63, 65.) They have never paid it, but seek dishonestly to avoid the payment. Plaintiff has paid it under circumstances entitling him to do so, and to be subrogated to the rights of the party to whom the payment was made.

*Geo. B. Bradley*, for the appellants. The Tompkins bond and mortgage were paid, satisfied and discharged. The advance of the money to pay this bond and mortgage was made pursuant to and in performance of that corruptly usurious agreement; and for that reason the plaintiff cannot make that advance and payment the ground of any claim. (*Rice* v. *Welling*, 5 Wend., 595, 598.) The plaintiff had no security prior to this corrupt agreement, for which the amount of this Tompkins bond and mortgage was substituted, but the advance to pay them was the product of that arrangement. He can take no benefit of any thing growing out of that. (*Kellogg* v. *Adams*, 39 N. Y., 28, and cases there cited.) All prior valid securities held by plaintiff and Hungerford, involved in the transaction, were restored by the adjudication (*Winsted Bank* v. *Webb*, 39 id., 325), and such was the effect upon their decree of foreclosure; but they had no right or interest in the bond and mortgage in question. Their advance grew out of, and was in performance of, the usurious agreement. And that advance was

made for the defendants to pay their bond and mortgage, and was a portion of the amount which they undertook, to pay to plaintiff and Hungerford, and was secured by the bond and mortgage of November 1, 1858, made pursuant to the same agreement, and thereby infected with usury. The advance in this case was made pursuant to a corrupt agreement. The defendants, in performance of that agreement, by their bond and mortgage, undertook to pay the sum so advanced. The agreement, pursuant to which the advance and undertaking were made, was usurious. That undertaking of the defendants was the primary product in favor of the plaintiff and Hungerford of their agreement to make, and for making that advance; whatever else there was by way of security was collateral to that undertaking, and was infected by the same, and fell with it. (*Dewitt* v. *Brisbane*, 16 N. Y., 508; *Schroeppel* v. *Corning*, 5 Denio, 236.) The plaintiff has no right of subrogation. The court erroneously held that this right arose out of his advance and payment of the Tompkins bond and mortgage. It is a familiar proposition, and not questioned, that a party having an incumbrance by way of mortgage, etc., may, for his protection, pay a prior mortgage, and be subrogated to the right of the prior mortgagee. (*Ellsworth* v. *Lockwood*, 42 N. Y., 96.) But the right of redemption does not in all cases carry with it the right of subrogation. (*Dauchy* v. *Bennett*, 7 How., 375; *Jenkins* v. *Continental Ins. Co.*, 12 id., 66, 68, 69.) After their sale and purchase on the decree, if there had been no agreement, they would have had the right of redemption, but not that of subrogation. (7 How., 375; 12 id., 66–69.) The position taken by the plaintiff necessarily is, that because the agreement, pursuant to, and in performance of which, the money was advanced, has been adjudged usurious and void, the advance should be deemed to have been made to pay the Tompkins mortgage in exercise of the right of a subsequent incumbrancer to redeem, and he be subrogated to the rights of the prior mortgagee. That will not do. (*Rice* v. *Welling*, 5 Wend., 598, 590.) If Tompkins had taken for his mortgage substituted security, and it had been adjudged usurious, he could have had his remedy on the original mortgage. But it is believed that no case can be found to support the position that a third party who, pursuant to, and in performance of, a corruptly usurious agreement

with the mortgagor, advances money to pay his mortgage, can take any right by virtue of such advance to or under the mortgage thus paid.

*Per Curiam :*

This cause appears to have been very carefully considered at Special Term, and I think the judgment can be properly affirmed on the opinion of the learned judge there delivered, and should be so affirmed.

TALCOTT, J., concurs. MULLIN, J., dissents.

Judgment affirmed.